UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANA COOPER, on behalf of<br>herself and all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>INTEGRITY HOME CARE, INC.,<br><br>    Defendant. | Case No. 4:16-cv-01293-DGK |

## ORDER CONDITIONALLY CERTIFYING COLLECTIVE ACTION AND REJECTING PLAINTIFF'S PROPOSED NOTICE

This action arises from Plaintiff Dana Cooper's ("Plaintiff") allegations that Defendant Integrity Home Care, Inc. ("Integrity"), which provides home healthcare, unlawfully withheld overtime wages from hourly, non-exempt home healthcare workers in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500, et seq.

Pending before the Court is Plaintiff's Motion for Conditional Collective Action Certification, Approval of Notice, and Expedited Consideration (Doc. 11). Plaintiff requests the Court conditionally certify this matter as a collective action under the FLSA. Plaintiff further requests that the Court authorize her to send notice under 29 U.S.C. § 216(b) to all current or former home healthcare workers employed by Integrity and its affiliated entities from January 1, 2015, to the present. For the reasons set forth below, Plaintiff's motion is GRANTED IN PART. Plaintiff's collective is conditionally certified, and Plaintiff is directed to file a revised proposed notice, plaintiff consent form, email, and follow-up correspondence within 14 days of this order. Integrity shall provide the full name, address, email address, dates of employment, and employee

1

number or unique identifier for each potential collective member to Plaintiff within 14 days of this order.

## Background

Integrity Home Care, Inc., provides healthcare services in private homes "in order to help [an] individual manage, among other things, special health needs, injury or illness, chronic illness, aging, infirmity, or disability." Def.'s Br. in Opp. at 1 (Doc. 19). Home healthcare services may include care from personal care aides ("PCA") or advanced personal care aides ("APCA") employed by Integrity. PCAs provide "a wide variety of services including, but not necessarily limited to, companionship, respite, meal preparation, transportation, assistance with house work, arranging for medical care, and assistance with activities of daily living including dressing, grooming, toileting, feeding, laundry and bathing." Stepp Aff., Def.'s Ex. A ¶ 13 (Doc. 19-1). APCAs "provide additional services including, but not necessarily limited to, ostomy care, catheter care, bowel programs, and range of motion services, among other things." *Id.* ¶ 14.

Plaintiff began working for Integrity as a PCA in February of 2002. Cooper Aff., Pl.'s Ex. D at 1 (Doc. 11-4). It is undisputed that Plaintiff was exempt from the overtime pay requirements of the FLSA until 2015. A Department of Labor ("DOL") Final Rule set to take effect on January 1, 2015, may have entitled Plaintiff, other PCAs, and APCAs to overtime pay under the FLSA.[1] But, because the new rule was vacated before it was set to take effect and only later reinstated by the courts, Integrity did not begin paying its PCAs and APCAs overtime until November 12, 2015.[2]

---

[1] *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 & 60,455 (Oct. 1, 2013) ("Final Rule").

[2] In October 2013, the DOL published a Final Rule amending regulations relating to "companionship services" and eliminating the overtime exemption for third-party employers of companionship-services and live-in employees. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 & 60,455 (Oct. 1, 2013). This rule was set to take effect on January 1, 2015. *Id.* Prior to that effective date, trade associations representing

Plaintiff filed this lawsuit on December 14, 2016, alleging Integrity unlawfully withheld overtime wages from hourly, non-exempt home healthcare workers in violation of the FLSA and the MMWL. She now seeks conditional certification of a proposed collective defined as:

> [A]ll current or former Personal Care Aides and Advanced Personal Care Aides who were employed directly by Defendant and provided companionship services to elderly persons and others . . . , and who were not paid overtime for all hours worked in excess of 40 hours per week . . . at any time from January 1, 2015 to November 12, 2015. Excluded are any persons who worked as a CDS Attendant.

Am. Compl. ¶ 1 (Doc. 23).[3]

## Standard

The purpose of the FLSA is to eliminate unfair labor practices by barring "customs and contracts which allow an employer to claim all of an employee's time, while compensating him for only part of it." 29 U.S.C. § 201 et seq.; *Tennessee Coal Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602 (1944). Sections 206 and 207 of the FLSA require employers to pay employees a regular hourly rate for up to forty hours a week and overtime compensation at a rate of one and one-half times the regular rate for hours worked in excess of forty. 29 U.S.C. §§ 206, 207(a)(1). The FLSA includes an exemption from these overtime requirements for "domestic service employ[ees]" that "provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves." *Id.* § 213(a)(15); *see id.* § 213(b)(21)

---

home health care providers challenged the Final Rule in the United States District Court for the District of Columbia. In December 2014 and January 2015, the district court vacated the rule, concluding the DOL exceeded its rule-making authority in eliminating the FLSA exemption. *See Home Care Assoc. of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014) (vacating "third party employer" portion of Final Rule); *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123 (D.D.C. 2015) (vacating the DOL's rewritten definition of "companionship services"). But, on August 21, 2015, the Court of Appeals for the District of Columbia reversed the district court's vacatur. *Home Care Ass'n of Am. v. Weil*, 799 F.3d 1084, 1097 (D.C. Cir. 2015). The DOL then issued guidance stating it would not institute enforcement proceedings for violations of the rule until November 12, 2015. 80 Fed. Reg. 55,029 (Sept. 14, 2015). The effective date of this regulation is the subject of Integrity's motion to dismiss, and the Court will not address that argument now.

[3] Plaintiff initially defined the collective more broadly, but amended the definition after Integrity filed suggestions in opposition to the instant motion. *Compare* Compl. ¶ 19 (Doc. 1) *with* Am. Compl. ¶ 1 (Doc. 23). Integrity filed a sur-reply addressing the amended collective definition on March 3, 2017. Def.'s Sur-Reply (Doc. 34).

(exempting "any employee who is employed in domestic service in a household and who resides in such household" from FLSA overtime requirements).

The FLSA provides a private right of action to recover damages for violations of the Act's overtime provisions, 29 U.S.C. § 216(b), and Plaintiff now seeks to collectively pursue her claim and the claims of similarly-situated employees against Integrity pursuant to § 216(b), which provides that:

> An action to recover the liability prescribed in [§§ 206 or 207] may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, unlike Rule 23 class action requirements where potential plaintiffs are included in a class if they fail to "opt out," plaintiffs in a collective action must "opt-in" to participate. *Id.*

A court may conditionally certify a case as a collective action if plaintiff and the members of the collective raise similar legal issues regarding the alleged FLSA violations. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168-71 (1989). "Conditional certification may be granted if the Plaintiff can show common facts among the claims or can make a showing that there is a common unlawful policy that affects all of the collective members." *Montez-Freeman v. B&C Rest. Corp.*, No. 4:14-CV-0144-DGK, 2015 WL 12745795, at *1 (W.D. Mo. Jan. 5, 2015).

A motion for conditional certification is usually filed early in the litigation. Where, as here, the parties have not yet engaged in substantial discovery, the Court will apply a lenient standard of review to the motion. *Cf. McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2011 WL 6153091, at *3-5 (W.D. Mo. Dec. 12, 2011) (discussing the Court's use of an

4

*intermediate* standard of review in matters where the parties have engaged in substantial discovery). This lenient standard "is 'considerably less stringent than Rule 23(b)(3) class action standards.'" *Id.* at *3 (quoting *Kautsch v. Premier Commc'n*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007)). The Court will not consider the merits of a plaintiff's allegations, and the "plaintiff can essentially sustain its burden by alleging that 'the putative class members were together the victims of a single decision policy or plan . . . .'" *Id.*

If the class is conditionally certified, putative class members are sent notice and given an opportunity to "opt-in." *See id.*; *Kautsch*, 504 F. Supp. 2d at 688. The Court must ensure this notice is fair and accurate, and will not alter the proposed notice unless necessary. *Montez-Freeman*, 2015 WL 12745795, at *2.

## Discussion

Plaintiff seeks conditional certification based on the allegation that Integrity failed to pay Personal Care Aide and Advanced Personal Care Aide employees overtime from January 1, 2015, to November 12, 2015. Defendant argues the collective should not be conditionally certified and, if certified, Plaintiff's proposed notice to the collective is improper and should be rejected. These arguments are addressed in turn below.

**I.**     **Plaintiff has provided sufficient evidence illustrating she and putative collective members were subject to a single overtime pay policy, and the Court conditionally certifies the collective.**

Defendant first argues conditional certification is unwarranted because: (1) Plaintiff was exempt from the overtime wage provisions of the FLSA during all periods when Integrity failed to pay overtime wages; and (2) Plaintiff and the alleged putative collective are not similarly situated.

Because the Court does not consider the merits of a plaintiff's claims in ruling on a motion for conditional collective certification, it will not address Integrity's first, merits-based argument. *See McClean*, 2011 WL 6153091, at *3. This argument is one basis for Integrity's pending motion to dismiss (Doc. 32), and the Court will address it in ruling on that motion.

Integrity next argues that Plaintiff and the proposed collective members are not similarly situated, and conditional certification of the collective must be denied. Plaintiff avers that the revised collective definition includes only PCAs and APCAs that were all denied overtime pay by Integrity.

Conditional certification "requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 815 (W.D. Mo. 2005) (internal quotations omitted). "The burden is on the plaintiffs to demonstrate that they and the potential opt-in plaintiffs are substantially similar," but not necessarily identical. *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007).

Here, Plaintiff alleges she and Integrity PCAs and APCAs are similarly situated because they perform similar duties and were subject to the same unlawful policy, that is, Integrity's failure to pay them overtime after January 1, 2015. The Court agrees. First, though the duties of PCAs and APCAs may vary depending on the needs of a particular patient, the limited evidence before the Court illustrates their job duties are similar. *See* Stepp Aff. ¶¶ 13-14 (generally describing PCA and APCA job duties). Second, it appears Integrity believed some of its employees providing "companionship services" would be subject to the Final Rule and should be re-classified as "non-exempt" from FLSA overtime pay requirements after January 2015. *See* Integrity Overtime Policy, Pl.'s Ex. F (Doc. 11-6) (allowing overtime for employees "in

positions designated as non-exempt under [the] FLSA"); Integrity November 5, 2014, Memo, Pl.'s Ex. K (Doc. 11-11) (informing "Private Care and In-Home Services Caregivers" that the Final Rule will make them eligible for overtime pay); December 3, 2014, Letter, Pl.'s Ex. J (Doc. 11-10) (outlining overtime policy changes made to ensure compliance with Final Rule after January 1, 2015). But, Plaintiff states that Integrity did not pay her or other home healthcare workers overtime wages until December 2015, which suggests Integrity did not re-classify them as non-exempt employees. Cooper Decl. at 3 (Doc. 11-4). *See also id.* at 4 ("When I asked a supervisor why we [Plaintiff and other home healthcare workers employed by Integrity] were denied overtime [before mid-November 2015], I was told that the company did not pay overtime."); Cooper Payment Record, Pl.'s Ex. G (Doc. 11-7) (indicating Plaintiff was not paid overtime for hours worked in excess of forty a week between February and November 2015); Stepp Aff. ¶ 18 ("Integrity began paying Ms. Cooper overtime . . . as of the first payroll following November 12, 2015."). While this does not constitute direct evidence that all PCAs and APCAs were subject to a policy excluding them from overtime payment after January 2015, it is sufficient at this stage of the litigation to show that the putative collective is similarly situated for purposes of the FLSA.

Accordingly, the Court finds Plaintiff has eked over the low evidentiary bar to conditional certification.[4] The following collective is conditionally certified:

---

[4] Integrity also argues the collective should not be conditionally certified because Plaintiff has failed to show that putative collective members are interested in joining the action. Courts in the Eighth Circuit differ as to whether such a showing is required before a collective is conditionally certified. *See, e.g., Collins v. Barney's Barn, Inc.*, No. 4:12CV00685 SWW, 2013 WL 1668984, at *3 (E.D. Ark. Apr. 17, 2013) (requiring evidence that other similarly situated individuals desire to opt into the FLSA litigation for conditional certification) (collecting cases); *Ford v. Townsends of Ark., Inc.*, No. 4:08cv00509 BSM, 2010 WL 1433455, at *5 (E.D. Ark. Apr. 9, 2010) (no showing required); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007) (interest showing required); *Kautsch*, 504 F. Supp. 2d at 690 n.1 (no showing required). If the Court were to require Plaintiff to make such a showing, she would essentially be forced "to issue [her] own form of informal notice or to otherwise go out and solicit other plaintiffs." *Ondes v. Monsanto Co.*, No. 4:11CV197 JAR, 2011 WL 6152858, at *5 (E.D. Mo. Dec. 12, 2011) (quoting *Helmert v. Butterball, LLC*, 4:08CV00342, 2009 WL 5066759, at *5 (E.D. Ark. Dec. 15, 2009)).

7

[A]ll current or former Personal Care Aides and Advanced Personal Care Aides who were employed directly by Defendant and provided companionship services to elderly persons and others . . . , and who were not paid overtime for all hours worked in excess of 40 hours per week . . . at any time from January 1, 2015 to November 12, 2015. Excluded are any persons who worked as a CDS Attendant.[5]

## II. Plaintiff's proposed notice is not approved. Plaintiff is directed to submit a revised proposed notice within 14 days of this order.

The Court takes issue with one portion of Plaintiff's proposed notice, attached to Plaintiff's motion as Exhibit L. Integrity also objects to several portions of Plaintiff's proposed notice. Each issue is addressed in turn below.

Under the FLSA, the court has a duty to ensure that the conditional certification notice sent is fair and accurate, but the court should not alter the proposed notice unless such alteration is necessary. *Lewis v. ASAP Land Exp.*, Inc., No. 07-2226-KHV, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008). "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). Courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.*

First, Plaintiff must remove the first-page header identifying the court. Such a header may be misconstrued as judicial support for plaintiffs, and the Court must avoid the appearance of bias. *See Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 499 (D. Neb. 2009) ("[P]lacing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiffs' litigation."). Plaintiff must also remove the first sentence of the notice, stating: "A court authorized this notice. This is not a solicitation from a lawyer." In its place, Plaintiffs shall

---

The Court agrees that such a rule would "unnecessarily give rise to potential ethical issues," and will not impose this requirement. *Id.*

[5] Integrity requests the Court limit the collective to only those PCAs and APCAs employed by Integrity since November 12, 2015. This argument implicates Integrity's merits-based argument regarding the DOL Final Rule effective date, which will be addressed in the Court's ruling on its motion to dismiss.

include the following: "The United States District Court for the Western District of Missouri authorized this notice, but has not considered nor made any decision regarding the merits of plaintiff's claims or defendant's defenses."

Second, Plaintiff shall include a statement regarding the fee agreement entered into by opt-in plaintiffs. The parties agree on this point, and Plaintiff proposed language for this statement. The Court has revised Plaintiff's language to more accurately reflect its role in reviewing attorneys' fees. The revised statement is as follows:

> If you choose to join this case, you will be designating Plaintiff's counsel to represent your interests and will be bound by the terms of any judgment entered, whether favorable or unfavorable to you. The attorneys have taken this case on a contingency fee basis. This means they will only be paid if there is a monetary recovery through a settlement or judgment in your favor. If there is a recovery, the attorneys will receive a part of any money judgment or settlement. You will not have to pay the attorneys out of your own pocket. The details are outlined in a separate fee agreement with the attorneys. Any attorneys' fees paid to Plaintiff's counsel in connection with any judgment, settlement, or other recovery in this case will be reviewed by the Court to ensure fees are reasonable.

Because any potential collective members should have the opportunity to review the fee agreement before they are bound by it, Plaintiff shall either: (1) include a copy of the fee agreement with the notice; or (2) include language allowing opt-in plaintiffs to opt-out within seven days of receiving the fee agreement.

Third, Plaintiff shall remove the section titled "Immigration Status." The parties agree to this change, and the Court accepts their recommendation.

Fourth, Plaintiff shall include language informing recipients that they may: (1) have to pay some portion of Integrity's costs and expenses should it prevail; and (2) be subject to discovery, including sitting for a deposition in or near Kansas City, Missouri. *See Creten-Miller v. Westlake Hardware, Inc.*, No. 08-2351-KHV, 2009 WL 2058734, at *4 (D. Kan. July 15, 2009) (noting that "[a]n award of costs to a prevailing defendant in an FLSA case is clearly

possible and is not merely theoretical"); *see also Halsey v. Casino One Corp.*, No. 4:12CV1602 CDP, 2012 WL 6200531, at *5 (E.D. Mo. Dec. 12, 2012). Integrity also asserts the notice should include a statement explaining that an opt-in plaintiff may be deposed by Integrity for up to seven hours. Such language may have an undue chilling effect on potential collective members' participation, and the Court overrules this portion of Integrity's objection.

Fifth, Plaintiff shall add the following language after the paragraph beginning "If you do not wish to be part of this lawsuit, you do not need to do anything":

> By not filing a Consent Form to join in this case, you will not participate in this lawsuit and will not be bound by any judgment or settlement. If you so choose, you may pursue your claim on your own, and you may select your own counsel.

Integrity argues the section entitled "Notice of Collective Action Lawsuit," as proposed, is misleading because it suggests that putative collective members' rights may be affected even if they choose not to join the collective. The above language shall be included to alleviate Integrity's concern.

Sixth, Integrity argues the "Your Rights and Obligations" portion of the notice "suggests there will be an 'award' to 'share' and that if [potential collective members] fail to provide the form in time they 'may' not be able to participate." Def.'s Sugg. in Opp. at 22 (Doc. 19). This objection is overruled. The notice, as written, does not mention an "award" to "share," and clearly outlines that the mailed or electronically-submitted consent forms must be submitted on or before 60 days from distribution of the notice for putative members to participate in the action.[6]

Plaintiff shall submit her revised notice to the Court within 14 days of this order.

---

[6] Integrity also argues that Plaintiff failed to clearly define the alleged putative class members. Plaintiff has since amended the class definition, and Integrity did not renew this argument in its sur-reply addressing the amended definition. Plaintiff shall amend the portions of the notice referring to opt-in plaintiffs as "Home Health Care Workers" to read "Personal Care Aides and Advanced Personal Care Aides." In all other respects, the Court treats this argument as moot.

### III. Plaintiff shall submit a revised proposed plaintiff consent form within 14 days of this order.

Integrity asserts two objections to Plaintiff's proposed plaintiff consent form (Doc. 11-12 at 3). Integrity argues: (1) that the signature page should state that the opt-in plaintiff will be required to execute a legal services agreement with plaintiff's counsel; and (2) the section that reads "If this case does not proceed collectively, then I also consent to join any subsequent action to assert these claims against Integrity Home Care, Inc. . . . ." should be deleted.

The first objection is overruled. The notice already includes a section explaining that opt-in plaintiffs will be subject to a separate attorneys' fee agreement with Plaintiff's counsel.

Integrity's second objection is sustained. Plaintiff shall remove that portion of the consent form. *See Hembree v. Mid-Continent Transp., Inc.*, No. 08-6094-CV-SJ-HFS, 2010 WL 3927764, at *5 (W.D. Mo. Oct. 4, 2010) (striking similar language).

Plaintiff shall submit a revised proposed plaintiff consent form within 14 days of this order.

### IV. A 60-day opt-in period would not cause unreasonable delay.

Integrity objects to Plaintiff's proposed 60-day opt-in period, arguing that a 45-day opt-in period would better promote judicial efficiency. Def.'s Br. in Opp. at 25. Courts in the Eighth Circuit have routinely allowed for opt-in periods of 60 days or more. *See, e.g., Murray v. Silver Dollar Cabaret, Inc.*, No. 5:15-CV-5177, 2017 WL 514323, at *6 (W.D. Ark. Feb. 8, 2017) (allowing for a 90-day opt-in period where putative collective members were transient and contact information was difficult to obtain); *Dolgin v. Monsanto Co.*, No. 4:12CV01793 ERW, 2013 WL 4829218, at *4 (E.D. Mo. Sept. 10, 2013) (finding proposed 60-day opt-in period to be appropriate). Integrity has not explained why a 60-day opt-in period would cause unreasonable delay, and the Court overrules this objection.

**V. Integrity shall provide the full name, address, email address, dates of employment, and employee number or unique identifier for each potential collective member within 14 days of this order. If Plaintiff's revised notice is approved, Plaintiff is authorized to send notice via mail, email, and follow-up correspondence, and Integrity shall post notice in its workplaces.**

Finally, Plaintiff requests the Court: (1) order Integrity to provide employee information to facilitate notice; (2) authorize the proposed notice to be mailed, emailed, and posted in Integrity's workplaces; and (3) authorize use of a reminder postcard. Integrity objects to each of these requests. Integrity's objections are largely overruled.

First, Plaintiff requests that Integrity be required to provide the names, addresses, email addresses, and any employee number or unique identifier of the putative collective members in an electronic format to facilitate mailing of the notice. Integrity objects, stating the Court should limit production to employee names and addresses to avoid "expos[ing] confidential and highly sensitive information," and to minimize "distraction." Def.'s Br. in Opp. at 23 (Doc. 19). Integrity does not explain its objection to the provision of employee numbers or unique identifiers, and this objection is overruled.

The Court is unconvinced that provision of potential plaintiffs' email addresses will "only add to the distraction," "expose confidential and highly sensitive information," and "unduly invade the privacy of potential plaintiffs." *Id.* at 23-24. "At this stage of litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs" and, in this day and age, email is an efficient and cost-effective way to contact potential plaintiffs. *Kautsch*, 504 F. Supp. 2d at 690. *See also Rhodes v. Truman Med. Ctr.*, No. 4:13-CV-00990-NKL, 2014 WL 4722285, at *5 (W.D. Mo. Sept. 23, 2014) ("[E]mail provides an efficient and cost-effective means of disseminating notice documents and has been endorsed by courts in the past."). Nothing Plaintiff proposes would make a reasonable person feel their privacy was being invaded.

Accordingly, Integrity's objection to provision of potential plaintiffs' email addresses is overruled.

Plaintiff also requests Integrity supply the birthdates, last four digits of social security numbers, and telephone numbers of anyone whose notice is returned as undeliverable to enable "skip-tracing" of those individuals. This request is granted. Integrity shall supply the telephone number, birthdate, and last four digits of a potential opt-in plaintiff no later than five days after Plaintiff provides proof that the individual's notice was returned as undeliverable.

Second, Plaintiff requests that the Court authorize notice be mailed, emailed, and posted in Integrity's offices. Integrity objects to the emailing and posting of the notice. For the reasons set forth above, Integrity's objections to emailing notice are overruled. Integrity generally objects to posting the notice at any Integrity office location, but does not provided a basis for this objection. This objection is also overruled. Integrity shall conspicuously post notice in its workplaces.

Third, Plaintiff requests authorization of follow-up correspondence, in the form of a postcard, to be sent before the end of the opt-in period to putative plaintiffs who have not responded to the initial notice. Integrity avers that "[c]ommunications between plaintiff's counsel and prospective opt-ins should be limited to minimize distractions and limit the chance of unnecessarily stirring up litigation." Def.'s Sugg. in Opp. at 24 (Doc. 19). Courts in the Eighth Circuit have approved follow-up postcards, but have required that Plaintiff include disclaimer language. *Murray v. Silver Dollar Cabaret, Inc.*, 2017 WL 514323, at *5 (granting request to send follow-up postcard, but requiring a "disclaimer that the Court neither encourages nor discourages participation"); *Holliday v. J. S. Express Inc.*, No. 4:12CV01732 ERW, 2013 WL 2395333, at *9 (E.D. Mo. May 30, 2013) (same). In order to alleviate Integrity's concerns

13

that the postcard will encourage litigation, Plaintiff shall include a disclaimer on the follow-up correspondence that the Court does not encourage or discourage participation in the litigation.

Integrity also objects to the format of the follow-up correspondence, arguing that "mailing postcards provides little privacy for an intended putative plaintiff." Def.'s Sugg. in Opp. at 25. The parties are to meet and confer regarding this objection, and shall submit a proposed follow-up notice in an agreed-upon format, e.g., in postcard, email, or letter form, at the time Plaintiff submits her revised notice.

## Conclusion

In conclusion, Plaintiff's Motion for Conditional Collective Action Certification, Approval of Notice, and Expedited Consideration (Doc. 11) is GRANTED IN PART. The Court conditionally certifies the following collective:

> [A]ll current or former Personal Care Aides and Advanced Personal Care Aides who were employed directly by Defendant and provided companionship services to elderly persons and others . . . , and who were not paid overtime for all hours worked in excess of 40 hours per week . . . at any time from January 1, 2015 to November 12, 2015. Excluded are any persons who worked as a CDS Attendant.

In accordance with this order, Plaintiff shall submit a revised notice, email, and follow-up correspondence within 14 days. Integrity shall provide the full name, address, email address, dates of employment, and employee number or unique identifier for each potential collective member to Plaintiff within 14 days of this order.

**IT IS SO ORDERED.**

Date: <u>May 1, 2017</u>           <u>/s/ Greg Kays</u>
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT