# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DANA COOPER, on behalf of herself and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:16-CV-1293-DGK<br>)<br>) |
| INTEGRITY HOME CARE, INC., | )<br>) |
| Defendant. | ) |

## ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT

This action arises from Plaintiff Dana Cooper's ("Cooper"), for herself and on behalf of a class of similarly situated individuals, allegations that Defendant Integrity Home Care, Inc. ("Integrity"), unlawfully withheld overtime wages from hourly, non-exempt home healthcare workers in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.550, et seq.

Now before the Court is the parties' joint motion for preliminary approval of a class action settlement (Doc. 111) and the parties' joint response to Court's request for additional information (Doc. 116). The parties seek Court approval of a comprehensive settlement ("the Settlement Agreement") consisting of 1) an FLSA collective action opt-in settlement, and 2) a Rule 23 class action settlement. Finding that a settlement class should be conditionally certified and that the Settlement Agreement is bona fide, fair, reasonable, and adequate, the motion for preliminary approval is GRANTED.

**Background**

A. **Procedural and Factual History**

Integrity provides healthcare services in private homes in order to help an individual manage special health needs, injury, chronic illness, aging, infirmity, or disability. Home healthcare services may include care from personal care aides ("PCA") or advanced personal care aides ("APCA"). PCAs provide "a wide variety of services including, but not necessarily limited to, companionship, respite, meal preparation, transportation, assistance with house work, arranging for medical care, and assistance with activities of daily living including dressing, grooming, toileting, feeding, laundry and bathing." Stepp Aff., Def.'s Ex. A ¶ 13 (Doc. 19-1). APCAs "provide additional services including, but not necessarily limited to, ostomy care, catheter care, bowel programs, and range of motion services, among other things." *Id.* ¶ 14.

Cooper began working for Integrity as a PCA in February of 2002. Cooper Aff., Pl.'s Ex. D at 1 (Doc. 11-4). It is undisputed that Plaintiff was exempt from the overtime pay requirements of the FLSA until 2015. A Department of Labor ("DOL") Final Rule set to take effect on January 1, 2015, may have entitled Cooper, other PCAs, and APCAs to overtime pay under the FLSA. But, because the new rule was vacated before it was set to take effect and only later reinstated by the courts, Integrity did not begin paying its PCAs and APCAs overtime until November 12, 2015.

Plaintiff filed this lawsuit on December 14, 2016, alleging that Integrity unlawfully withheld overtime wages from hourly, non-exempt home healthcare workers in violation of the FLSA and the MMWL. Integrity's answer denied all material allegations and set forth affirmative defenses. (Doc. 10). On May 9, 2017, the Court conditionally certified a FLSA collective action (Doc. 47), which resulted in a class of approximately 138 opt-in plaintiffs. On May 10, 2017, the parties held a mediation and reached a tentative settlement. On June 16, 2017, this Court denied Integrity's

motion to dismiss, which argued that the DOL Final Rule did not require payment of overtime wages until November 12, 2015. (Doc. 65).

   B.   **Summary of the Settlement**

The settlement postulates two types of class members: FLSA opt-in plaintiffs and MMWL Rule 23 claimants. For both FLSA opt-in plaintiffs and Rule 23 claimants who submit a valid claim form, Integrity will pay seventy-five percent of the alleged unpaid overtime for all hours worked in excess of 40 hours per week at any time from January 1, 2015 to November 12, 2015, paid at the rate of one-half the regular rate of pay for each individual. Checks not cashed within 180 days of issuance will be voided and proceeds will be paid to the State of Missouri Unclaimed Property Fund in the name of any individual whose check remains uncashed.

The parties have hired Analytics Consulting, LLC as the Settlement Administrator. Integrity will pay the settlement administration costs. In addition to notifying class members of the settlement and calculating settlement amounts, Analytics Consulting will establish a toll free telephone line and a website to answer class members' questions and provide information about the Settlement Agreement.

Analytics Consulting will also send to each class member who did not previously opt-in a notice informing them of their right to participate in the settlement and the calculations for determining the settlement amount they are entitled to receive. Any class member who timely opts out by submitting a valid exclusion will not be paid any amount and will not release any federal or Missouri state law claims.

The parties agree that if all eligible class members make claims, $174,405.76 in total payments would be made to the class. However, the parties estimate that between 233 and 310 (about 30% to 40% of eligible class members) claims will be made, resulting in between $52,321.73 and $69,762.30 paid to the class.

The parties agree that Cooper—as class representative—will receive a service award of $2,500 for her efforts in prosecuting the case. Integrity also agrees not to oppose Plaintiff counsel's motion for approval of their fees, costs, and expenses, not to exceed $96,263.05.

## Discussion

### I. The FLSA Collective Action Settlement

#### A. The standard governing court approval of a FLSA collective action.

A valid settlement of an FLSA claim requires Department of Labor or court approval. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "To approve an FLSA settlement, the Court must find that: (1) the litigation involves a bona fide wage and hour dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorneys' fees." *Hill v. World Wide Tech. Holding Co.*, No. 4:11CV02108-AGF, 2012 WL 5285927, at *1 (E.D. Mo. Oct. 25, 2012) (internal quotation marks and citation omitted). To determine whether an FLSA settlement is fair and equitable, courts use many of the same factors used in evaluating a proposed Rule 23 class action settlement, including: (1) at what stage of the litigation the settlement was reached, and the complexity, expense, and likely duration of the remaining litigation; (2) how the settlement was negotiated, *i.e.*, whether there are any indicia of collusion; (3) class counsel, the parties, and the class members' opinions about the settlement; and (4) whether the present value of the settlement outweighs the potential recovery after continued litigation. *See id.*; *Sanderson v. Unilever Supply Chain, Inc.*, No. 4:10-CV-0775-FJG, 2011 WL 5822413, at *2 (W.D. Mo. Nov. 16, 2011).

A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute. *King v. Raineri Const., LLC.*, No. 4:14-cv-1828, 2015 WL 631253, at *1 (E.D. Mo. Feb. 12, 2015). "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and the liability of

the issues." *Grahovic v. Ben's Richardson Pizza*, No. 4:15-cv-1659, 2016 WL 1170977, at *2 (E.D. Mo. March 25, 2016).

### B. The FLSA Settlement is bona fide, fair, and equitable.

The parties' arguments throughout this litigation indicate that the settlement resolves a bona fide dispute. Cooper has consistently maintained that the applicable FLSA regulations required Integrity to pay overtime wages starting on January 1, 2015. Integrity has consistently maintained that it did not violate the FLSA by refusing to pay overtime wages because the new regulations did not become effective until November 12, 2015. It has also consistently maintained that it acted in good faith, and that any violations were not willful. The parties engaged in a MAP mediation, which did not yield a final settlement agreement. Both parties have been represented by competent counsel throughout the litigation, and they continue to believe the merits of their respective positions. *See Netzel v. W. Shore Grp.*, No. 16-cv-2552, 2017 WL 1906955, at *6 (D. Minn. May 8, 2017) ("Courts have held that negotiations involving counsel and a mediator . . . raise a presumption of reasonableness."). The Court finds that a bona fide dispute exists as to the validity and effective date of the federal regulations on overtime pay. *See id.* (finding a bona fide dispute between parties where the defendant denied both violating the FLSA and owing plaintiff class any wages or damages).

The settlement is fair and equitable. It provides class members with one-half of their hourly-rate payment for seventy-five percent (75%) of their alleged unpaid overtime hours. *See Collins v. Veolia ES Indus. Servs.*, No. 15-cv-743, 2016 WL 1275598 (E.D. Mo. April 1, 2016) (approving settlement providing payment of unpaid wages to each plaintiff in amount representing approximately 80% of each plaintiff's alleged damages). Additionally, the settlement seems to have been reached by arm's length negotiation well into the litigation, and both parties were represented by counsel. The parties have exchanged initial disclosures, participated in settlement negotiations,

and continued to exchange information after the first settlement attempt failed. These interactions are sufficient for the parties to understand the potential recovery and risks associated with proceeding to trial. *See Fry v. Accent Marketing Servs., LLC*, No. 4:13-cv-59, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014) ("Each party was represented by competent counsel during settlement negotiations and throughout the pendency of this case . . . . yet the litigation is not so advanced that the parties will not realize significant benefits by settling before . . . trial."); *Netzel*, 2017 WL 1906955, at *5 ("The essential considerations regarding the stage of the ligation is whether the parties have exchanged sufficient information to evaluate their claims and to allow the parties to engage in meaningful settlement discussions—this requires no formal discovery.").

## II. The Rule 23 class action settlement

### A. The standard governing court approval of a Rule 23 settlement.

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "[T]he district court acts as a fiduciary, serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). In determining whether a settlement is fair, adequate, and reasonable, a district court is required to consider four factors: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *Id.* at 933 (internal citation omitted). "Once satisfied that there is a plausible basis to approve the settlement, the Court directs notice and solicits the views of class members." *Schumacher v. SC Data Center*, No. 2:16-cv-4078, 2017 WL 1487623, at *1 (W.D. Mo. April 24, 2017). Following the close of any

opt-out and comment deadline, the Court holds a hearing required by Rule 23(e) and issues a final finding on whether the settlement is fair, reasonable, and adequate.

### B. Rule 23 Class Action Certification is Appropriate.

The parties seek preliminary certification under Rule 23 of the following class:

All current or former Nurse Aids, Certified Nurse Aids, Personal Care Aides and Advanced Personal Care Aids who were employed directly by Integrity, and who were not paid overtime for all hours worked in excess of 40 hours per week at any time from January 1, 2015 to November 12, 2015. Excluded are any persons who worked as a CDS attendant.

The first factor in assessing a settlement agreement is the merits of the plaintiff's case, weighed against the terms of the settlement. *See Wireless Telephone Litig.*, 396 F.3d at 932. Plaintiff's claims have some legal merit, and this Court recognized as much by denying Integrity's motion to dismiss (Doc. 47). As discussed, there is a bona fide dispute concerning the applicable date of the FLSA regulations governing Integrity's obligation to pay overtime wages. The Settlement Agreement provides an immediate monetary award to all claimants without the costs and risks that accompany a trial. The Settlement Agreement's disbursement of seventy-five percent (75%) of the plaintiff's alleged unpaid overtime hours, paid at one-half the hourly rate, is reasonable. *See Collins*, 2016 WL 1275598, at *2 (approving settlement providing payment of unpaid wages to each plaintiff in amount representing approximately 80% of each plaintiff's alleged damages). Thus, considering both the merits of the Plaintiff's case and the terms of the Settlement Agreement, the Court find the Settlement Agreement to be fair, adequate, and reasonable.

Second, Integrity concedes that it can pay the full settlement amount. *See Wireless Telephone Litig.*, 396 F.3d at 933 (affirming the district court's summary assessment of this factor by stating defendant could afford to pay the settlement).

Third, the complexity and expense of further litigation favors settlement. Here, this case would likely involve additional motions relating to class certification, discovery, and summary

judgment, as well as trial and appeal. *See In re Charter Commc'ns*, No. 4:02-cv-1186, 2005 WL 4045741, at *8 (E.D. Mo. June 30, 2005) ("The possible length and complexity of further litigation is a relevant consideration to the trial court in determining whether a class action settlement should be affirmed." (citation omitted)). The time and cost associated with continued litigation counsel finding in favor of the parties' Settlement Agreement.

Fourth, the parties are not presently aware of any class members who intend to oppose settlement. Upon filing of this order, the parties will send a Settlement Notice (Exhibits B and C to the Settlement Agreement) to class members describing how to object to the settlement. A further inquiry into this element may be conducted after assessing the class members' response to the notice.

### C. Conditional certification of a Rule 23 settlement class is appropriate.

In determining whether to certify a class under Rule 23, "the Court must consider whether the proposed settlement meets the requirements under Rule 23." *In re Charter Commc'ns*, 2005 WL 4045741, at *11. Those Rule 23(a) requirements are: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; 4) the representative parties will fairly and adequately protect the interests of the class. If Rule 23(a) is satisfied, Rule 23(b) sets forth the types of class actions that may be brought.

Here, all four Rule 23(a) elements are satisfied. The class size—approximately 775—meets the numerosity requirement. *See Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 457 (W.D. Mo. 2004) ("Satisfaction of the numerosity prong does not require that joinder be impossible, but only that plaintiffs will suffer a strong litigation hardship or inconvenience if joinder is required."). The applicable date of the FLSA overtime regulation is a common question of law that meets the commonality requirement. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("The

interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal factual positions." (citation omitted)). As for typicality, Cooper's claims and the class members' claims all concern Integrity's alleged failure to pay overtime wages. The adequacy requirement is also met because there are no disabling conflicts between Cooper and the class, and class counsel is experienced and competent in class litigation. *See Bishop v. Comm. on Prof. Ethics & Conduct of Iowa State Bar Ass'n.*, 686 F.2d 1278, 1288 (8th Cir. 1982) (noting to meet adequacy, the class representative's interests must be consistent with those of the class, and class counsel must be qualified and competent).

The class also satisfies Rule 23(b)(3)'s requirement that common issues predominate over individual ones. "At the core of Rule 23(b)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010). When presented "with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). But the "other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.* The proposed Rule 23 settlement class is sufficiently cohesive to certify a class. The proposed class representative seeks redress for the same alleged harm as the class members, and commons questions of law and fact—such as the FLSA regulation's effective date—predominate over individual questions. Class resolution is also superior to other available methods for adjudication because class-wide settlement is a more efficient use of the parties'—and the judiciary's—resources.

**III. The proposed class notices, claim form, and plan are approved.**

The proposed notice must satisfy due process; it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," and it must "clearly and concisely state in plain, easily understood English: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).

Here, the notices inform the settlement class members of the following: a) identity of the certified class; b) the claims class members will forfeit if they participate in the settlement; c) the material terms of the proposed settlement; d) the class members' rights under the settlement; e) how to get money from the settlement; f) the class members' rights to their own counsel; g) the amounts that will be requested in attorneys' fees and for the incentive payment; and h) the answers to commonly asked questions. The Court finds that the proposed notices conform with due process and Rule 23(b)(3).

To avoid confusion, increase the percentage of claims made, and provide a check on data accuracy, the Court does request one change to the Settlement Claim Form. The second paragraph of the Claim Form currently reads (in part):

> If the Court grants final approval of the Settlement and you timely return this completed Claim Form, you will be eligible to receive a gross payment equal to seventy-five percent (75%) of any alleged unpaid overtime hours you may have worked in excess of 40 hours per week at any time from January 1, 2015 to

> November 12, 2015, paid at the rate of one-half (1/2) you regular rate of pay (the "CLAIM").

The Court suggests the below edits to the above excerpt, as well as adding a sentence estimating the specific amount each class member is entitled to under the Settlement:

> If the Court grants final approval of the Settlement and you timely return this completed Claim form, you will be eligible to receive a gross payment equal to seventy-five percent (75%) of any alleged unpaid overtime hours you may have worked in excess of 40 hours per week—paid at the rate of one-half (1/2) your regular rate of pay—at any time from January 1, 2015 to November 12, 2015 (the "CLAIM"). In your case, this amount is estimated to be (X).

### IV. Cooper's service award and class counsel's attorneys' fees

The proposed class representative payment of $2,500 appears reasonable. *See Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017) (finding that the district court did not abuse its discretion in awarding a $10,000 service award where plaintiffs participated in discovery and conferences, and met with counsel, throughout five years of litigation). The Court will reserve judgment on the requested attorneys' fees until the final fairness hearing, so it can ensure what fees are appropriate.

## Conclusion

After careful review and consideration of the Settlement Agreement, the Court finds and orders as follows.

1. This Court has jurisdiction over the subject matter of the action and over all parties to the action, including all Class Members.

2. The Court gives preliminarily approval to the Settlement Agreement, subject to final determination by the Court at the final fairness hearing.

3. The Court conditionally certifies, for settlement purposes only (and for no other purpose and with no other effect upon the Action, including no effect upon the Action should the Settlement Agreement not receive final approval or should the Effective Date not occur), a class as:

All current or former Nurse Aids, Certified Nurse Aids, Personal Care Aides and Advanced Personal Care Aids who were employed directly by Integrity, and who were not paid overtime for all hours worked in excess of 40 hours per week at any time from January 1, 2015 to November 12, 2015. Excluded are any persons who worked as a CDS attendant.

4. The Court appoints, for settlement purposes, Plaintiff Dana Cooper as Class Representative, and Attorneys George Hanson and Curtis Shank of Stueve Siege Hanson LLP and Philip Bohrer and Scott Brady of Bohrer Brady LLC as Settlement Class Counsel.

5. A hearing (the "Final Fairness Hearing") shall be held on a future date to be determined in consultation with the parties. The hearing will be held at the United States District Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, in Courtroom 8D, located at 400 East 9th Street, Kansas City, Missouri, 64106. The hearing will determine whether the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court, and to determine any amount of fees and expenses that should be awarded to Class Counsel and any award to the Class Representatives for their representation of the Settlement Class.

6. The Court approves, as to form and content, the Notices submitted by the parties (Exhibits B and C to the Settlement Agreement). The Court otherwise finds that the procedures described in the Notices meet the requirements of Rule 23(e) of the Federal Rules of Civil Procedure and due process, and provide the best notice practicable under the circumstances. The Court further finds the proposed method of class notice—direct mailing and email—is reasonably calculated to reach a substantial percentage, if not all, of the Class Members.

7. The Court appoints Analytics Consulting, LLC as the Settlement Administrator. Integrity shall bear the cost of paying Analytics Consulting, LLC. The Settlement Administrator—with the aid of both parties—will identify and contact Class Members by both first-class direct mail and email.

8. The Court approves the Notice and Approval Schedule set forth in Exhibit 3 of the Joint Motion for Preliminary Approval (Doc. 111).

9. At or after the Final Fairness Hearing, the Court shall determine whether any application for attorneys' fees and expenses, and any award to the Class Representatives for their representation of the Settlement Class, should be approved.

10. Neither this order, the fact that a settlement was reached and filed, the Settlement, nor any related negotiations, statements, or proceedings, shall be construed as, offered as, admitted as, received as, used as, or deemed to be an admission or concession of liability or wrongdoing whatsoever or breach of any duty on the part of Defendant or any other Release. This order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action.

11. All proceedings in this Action are stayed until further order of this Court, except as may be necessary to implement the settlement or comply with the terms of the Settlement.

12. By entering this order, the Court does not make any determination as to the merits of this case.

13. The Court retains jurisdiction to consider all further applications arising out of or connected with the Settlement. The Court may approve the Settlement, with such minor modifications as may be agreed to by the Parties, without further notice to the Settlement Class.

**IT IS SO ORDERED.**

Date: July 18, 2018 /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT